**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MARCI D. WALKINGSTICK DIXON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.   ) | Case No. CIV-19-391-KEW |
| ) | |
| STATE OF OKLAHOMA, ex rel. ) | |
| the Regional University System ) | |
| Of the Oklahoma Board of ) | |
| Regents d/b/a Northeastern ) | |
| State University; ) | |
| RICHARD REIF, individually; ) | |
| SHEILA SELF, individually; ) | |
| BRIANA CLIFTON-DRURY, ) | |
| individually, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

This matter comes before the Court on Individual Defendants Richard Reif, Sheila Self, and Briana Clifton Drury's Motion to Dismiss (Docket Entry #22). Plaintiff initiated this action on November 15, 2019 and amended the Complaint on February 4, 2020. Plaintiff alleges that she was employed by Northeastern State University from September 16, 2013 through August 16, 2018 and that she was subjected to gender, race, and disability discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Rehabilitation Act. She also contends that Defendants Dr. Richard Reif ("Reif"), Shelia Self ("Self"), and Briana Clifton Drury ("Drury")(collectively referred to as the "Individual Defendants") interfered with the exercise of her rights under the Family Medical Leave Act ("FMLA").

Specifically, Plaintiff asserts she is a Native American female with a disability – a seizure disorder. She states in the Amended

Complaint that she was employed by Defendant as the Director of Enterprise Systems Information Technology Services under the supervision of Defendant Reif, the Chief Information Officer/Director of IT, since 2015. Plaintiff alleges that, although her performance exceeded required expectations, she experienced harassment and differential treatment from Reif.

On her gender discrimination claim, Plaintiff contends she was one of three directors under Reif, but the only female director. She states that Reif subjected her to disparate and demeaning treatment, including:

- requiring Plaintiff to take notes of weekly meetings performing a gender-sterotyped secretarial function;
- for holiday events, Reif would tell Plaintiff and the administrative assistant, "why don't you girls take care of the party planning";
- male directors were allowed to come and go without making reports while she was required to account for her time and activities;
- male directors were given coaching, training, and resources when they had job performance issues by Reif while not doing the same for Plaintiff;
- Plaintiff was also not given equal time to discuss her work at director meetings and Reif would have one-on-one meetings with male directors while not affording Plaintiff the same opportunity; and
- Reif was "resistant" to Plaintiff's ideas and efforts, refused to share information on projects and excluded Plaintiff from meetings, stating he was "afraid of the Plaintiff".

Plaintiff also alleges that Reif was aware she was involved in tribal activities and government.  In this respect, Reif allegedly

- made offensive and demeaning comments such as "I don't want you going on a warpath" and "let's have a powwow";
- made derogatory comments about the Chief of the Keetoowah Tribe to Plaintiff; and
- made such offensive comments "a couple of times per month" throughout Plaintiff's employment.

Plaintiff alleges that on January 22, 2018, she requested a meeting with the University's Title IX Coordinator Compliance Officer wherein she complained and reported Reif's conduct.  Thereafter, Plaintiff alleges Reif became more confrontational and combative by isolating her in the workplace, ignoring her questions, comments, and concerns, and refusing to meet with Plaintiff.

Plaintiff alleges that on May 4, 2018, she submitted a formal complaint of Reif's actions to the University's human resources department and Vice President of Administration and Finance.

Plaintiff also asserts she was admitted to the hospital for seizures in July of 2018 and was discharged two days later but without a release to work.  She was released to work on July 19, 2018 and returned to work.  Upon her return Plaintiff was directed to fill out FMLA documentation of her absence.  She also met with the Assistant Vice President of Student Affairs and General Counsel of the President's office to discuss her formal complaint but alleges no remedial actions

3

were taken.

Plaintiff states in the Amended Complaint that her FMLA leave was approved and one day later, she received a meeting request from the Vice President of Administration and Finance and Director of Human Resources. Plaintiff alleges she was told that her employment was ending that day due to performance issues. Plaintiff contends that the reason given for her termination was pretext and the real reason was retaliation for reporting race and gender discrimination. Plaintiff asserts the following claims against the named Defendants:

- Count I – Racial and gender discrimination, retaliation, and hostile work environment in violation of Title VII against Defendant State of Oklahoma;

- Count II – Disability discrimination and retaliation in violation of the Rehabilitation Act against Defendant State of Oklahoma; and

- Count III – Retaliation for and interference with the exercise of FMLA leave against the Individual Defendants.

Through the pending Motion, the Individual Defendants contend Plaintiff=s claim against them failed to meet the plausibility standard enunciated in United States Supreme Court cases of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009). The Individual Defendants also challenge whether they may be individually liable under the FMLA since they were not Plaintiff's "employer" as defined by the Act.

As an initial matter, Plaintiff concedes that the claim against Defendants Drury and Self should be dismissed without prejudice. However, she continues to pursue the FMLA claim against Defendant Reif.

The Court addresses Reif's arguments in reverse order since the base question of whether an individual may be held liable for violating an employee's FMLA rights is potentially dispositive as a matter of law. Nothing in the case authority since its issuance has altered this Court's reasoning set out in Roberts v. LeFlore Co. Hosp. Auth., 2014 WL 1270422 (E.D. Okla. March 26, 2014). The Tenth Circuit remains silent on the issue of whether a public employee can be held individually liable for monetary damages under the FMLA. The Circuit Courts remain split on the issue. *Compare* Modica v. Taylor, 465 F.3d 174, 184–86 (5th Cir. 2006) (individual public employees fall within (ii)(I) and may be liable), and Darby v. Bratch, 287 F.3d 673, 680–81 (8th Cir.2002), *with* Mitchell v. Chapman, 343 F.3d 811, 832 (6th Cir.2003) (individual public employees do not fall within (ii)(I) and may not be liable), and Wascura v. Carver, 169 F.3d 683, 687 (11th Cir. 1999).

The question turns upon whether the FMLA's definition of an employer encompasses individual supervisors and other such persons with managerial authority. The FMLA specifically defines an "employer" as follows:

> (A) In general
>
> The term "employer"—
>
> (i) means any person engaged in commerce or in any industry or activity affecting commerce who

5

>employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;
>
>(ii) includes—
>
>(I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and
>
>(II) any successor in interest of an employer;
>
>(iii) includes any "public agency", as defined in section 203(x) of this title; and
>
>(iv) includes the Government Accountability Office and the Library of Congress.
>
>(B) Public agency
>
>For purposes of subparagraph (A)(iii), a public agency shall be considered to be a person engaged in commerce or in an industry or activity affecting commerce.
>
>29 U.S.C. § 2611(4).

The Tenth Circuit has determined that state employees from whom monetary damages are sought in their individual capacities under the FMLA cannot enjoy Eleventh Amendment immunity simply because the state may ultimately satisfy any judgment against them. Cornforth v. Univ. of Okla. Bd. of Regents, 263 F.3d 1129, 1132–33 (10th Cir. 2001). As this Court previously determined, "[t]he court, however, did not reach the issue of whether the public employee could be held individually liable, although it would appear to be an academic exercise to reach the conclusion in [Cornforth] if individual liability could not be conferred on public employees." Id. at *4.

6

The vast majority of the cases considering the positions on this issue have sided with the Eighth and Fifth Circuit Courts and concluded that individual liability may be conferred upon a "person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." *See* Miles v. Unified School Dist. No. 500, 347 F.Supp. 3d 626, 630 (D.Kans. 2018); Richards v. Schoen, 2018 WL 447731, at 5 (D.Kans. Jan. 17, 2018); Cordova v. New Mexico, 283 F.Supp. 3d 11028, 1037 (D.N.M. 2017); Hibben v. Oklahoma ex rel. Dep't of Veterans Affairs, 2017 WL 1239146, at *6 (N.D. Okla. Mar. 31, 2017); McFadden v. Tulsa Cty. Bd. of Cty. Comm'rs, 2016 WL 6902182, at *2 (N.D. Okla. Nov. 23, 2016); Washington-Walker v. Univ. of Okla. Bd. of Regents, 2016 WL 1453053, at *3 (W.D. Okla. Apr. 13, 2016); Kiefner v. Sullivan, 2014 WL 2197812, at *9-10 (N.D. Okla. May 27, 2014); Owens v. City of Barnsdall, 2014 WL 2197798, at *6 (N.D. Okla. May 27, 2014); Jeffers v. Redlands Comm. College Bd. of Regents, 2012 WL 137412, at *2 (W.D. Okla. Jan. 18, 2012); Saavedra v. Lowe's Home Centers, Inc., 748 F.Supp.2d 1273, 1291 (D.N.M. 2010) *but see* Arbogast v. Kansas, No. 13-CV-4007-JAR/KMH, 2014 WL 1304939, at *5-6 (D. Kan. Mar. 31, 2014); Lacher v. Bd. of Co. Comm'rs for Okla. Co. ex rel. Okla. Co. Clerk's Office, 2013 WL 268983, at 5 (W.D.Okla. Jan. 24, 2013).  This Court specifically declines to follow the reasoning in Lacher, relied upon by Reif in the briefing, as the basis for the opinion ignores the plain and express language of the statute which extends liability to "any person who acts, directly or indirectly, in the interest of an employer to any of the employees

7

of such employer."

Reif also contends that Plaintiff was not his "employee" as defined by the FMLA ("The term 'eligible employee' means an employee who has been employed -- (i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C.A. § 2611(2)(A).)  Again, Reif takes the terms "employee" and "employer" literally as the dictionary defines them, ignoring the express language of the FMLA under which the definition applicable to this case is determined.  From the well-plead allegations in the Amended Complaint, Reif may be determined to be subject to individual liability based upon his position and duties with the University under the FMLA.  The definition of "employee" cited by Reif merely establishes which persons are "eligible" to seek and obtain FMLA benefits and does not limit individual liability expressly established by 29 U.S.C. § 2611(4).  The FMLA by its terms can subject Reif as Plaintiff's superior to individual liability.

In this same vein, Reif's argument that the State of Oklahoma's sovereign immunity insulates him from liability ignores the statute's provision which extends liability to the individual supervisor.  Moreover, just as "a state cannot extend its sovereign immunity to its employees by voluntarily assuming an obligation to indemnify them", it cannot extend its sovereign immunity to an individual simply because it is immune. *See* Cornforth, 263 F.3d 1129 at 1132-33.

8

Reif also contends that he is entitled to qualified immunity. "To overcome a defendant's claim of qualified immunity in the context of a Rule 12(c) motion, a plaintiff's pleadings must establish both that the defendant's actions violated a federal constitutional or statutory right and that the right violated was clearly established at the time of the defendant's actions." Ramirez v. Dep't of Corr., Colo., 222 F.3d 1238, 1240 (10th Cir. 2000).  It is clearly established that the denial of qualifying leave and the termination of employment in relation to an FMLA leave request is a violation of the law. *See* Twigg v. Hawker Beechcraft Corp., 659 F.3d 987, 1006 (10th Cir. 2011).  In this case, Plaintiff has set forth allegations in the Amended Complaint which indicates (1) she requested FMLA leave at the request of the Human Resources Department of her employer; (2) her leave request was granted; and (3) her employment was terminated in close proximity to the request and approval of FMLA leave.  It is at this point that this Court must analyze the Amended Complaint under the Twombly standard for plausibility.

Clearly, Bell Atlantic changed the legal analysis applicable to dismissal motions filed under Fed. R. Civ. P. 12(b)(6), creating a refined standard on such motions. Khalik v. United Airlines, 671 F.3d 1188, 1191 (10th Cir. 2012)(citation omitted). Bell Atlantic stands for the summarized proposition that A[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.  Ashcroft v.

9

Iqbal, 129 S.Ct. 1937, 1949 (2009) quoting Bell Atlantic, 550 U.S. at 570. The Supreme Court did not parse words when it stated in relation to the previous standard that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief is Abest forgotten as an incomplete, negative gloss on an accepted pleading standard. Bell Atlantic, 550 U.S. at 546.

The Tenth Circuit has interpreted the plausibility standard as referring Ato the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs >have not nudged their claims across the line from conceivable to plausible. Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008). The Bell Atlantic case, however, did not intend the end of the more lenient pleading requirements of Fed. R. Civ. P. 8(a)(2). Khalik, 671 F.3d at 1191. Rather, in Khalik, the Tenth Circuit recognized the United States Supreme Court's continued endorsement of Rule 8's Ashort and plain statement requirement in the case of Erickson v. Pardus, 551 U.S. 89 (2007) wherein the Supreme Court found [s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. Id. at 93.

To demonstrate a claim for interference with FMLA rights, Plaintiff must allege "(1) she was entitled to FMLA leave, (2) an adverse action by her employer interfered with her right to take FMLA leave, and (3)

this adverse action was related to the exercise or attempted exercise of the employee's FMLA rights." DePaula v. Easter Seals El Mirador, 859 F.3d 957, 978 (10th Cir. 2017) (quoting Brown v. ScriptPro, LLC, 700 F.3d 1222, 1226 (10th Cir. 2012)). "A deprivation of these rights is a violation regardless of the employer's intent, and the McDonnell Douglas burden shifting analysis does not apply." DePaula, 859 F.3d at 978.

The facts presented by Plaintiff's Amended Complaint establish (1) she was entitled to FMLA leave, (2) she took FMLA leave, (3) she applied and was approved retroactively for FMLA leave by her employer. The facts as alleged do not establish an adverse action which interfered with Plaintiff's right to take the FMLA leave – she, in fact, took the leave without interference. As a result, Plaintiff has not stated a plausible claim for interference with her FMLA rights. Since the Amended Complaint cannot be further amended to cure this deficiency without changing the facts of the already stated case, this claim will be dismissed.

The same cannot be said, however, for the FMLA retaliation claim. An FMLA retaliation claim is subject to a different analysis than the claim of interference. *See* Dewitt v. Southwestern Bell Telephone Co., 845 F.3d 1299, 1318 (10th Cir. 2017) ("[R]etaliation claims under the FMLA are subject to the burden-shifting analysis of McDonnell Douglas."). "Under this analysis, the plaintiff bears the initial burden of establishing a prima facie case of retaliation, by proving that (1) she engaged in a protected activity; (2) [Reif] took an action that a

11

reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." Id. "Once the plaintiff successfully asserts a prima facie retaliation case, the burden shifts to the defendant to offer a legitimate, non-retaliatory reason for the employment action. The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual." Id. at 1319.

A plaintiff may proceed under a mixed motives theory and provide direct evidence of retaliation, although the Tenth Circuit Court of Appeals has questioned whether this approach is applicable in an FMLA retaliation claim. Twigg, 659 F.3d at 1004. "[A] plaintiff proceeding under the direct/mixed motives approach must present direct or circumstantial evidence that directly shows that retaliation played a motivating part in the employment decision at issue. In the FMLA context, the retaliatory animus must relate to the employee's FMLA-protected activities, including, *inter alia*, the taking of FMLA leave." Id. at 1004-05 (citations omitted).

Plaintiff has sufficiently stated facts to present a plausible claim against Reid for retaliation for exercising her FMLA rights. She alleges Reid participated in the termination of her employment in relatively close temporal proximity to the exercise of her FMLA leave rights. Accordingly, she has stated a prima facie case for retaliation and this claim against Reid will be permitted to proceed.

IT IS THEREFORE ORDERED that Individual Defendants Richard Reif,

Shelia Self, and Briana Clifton Drury's Motion to Dismiss (Docket Entry #22) is hereby **GRANTED**, in part, in that the claims against Defendants Shelia Self and Briana Clifton Drury are hereby **DISMISSED**. Additionally, the interference with FMLA rights claim asserted against Defendant Richard Reif is also **DISMISSED**. The Motion to Dismiss as it pertains to the retaliation for exercising FMLA rights claim asserted against Defendant Reif is hereby **DENIED**.

IT IS FURTHER ORDERED that Defendant Reif shall file an answer to the Amended Complaint no later than **DECEMBER 17, 2020**.

IT IS SO ORDERED this 3rd day of December, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE