## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MARCI D. WALKINGSTICK DIXON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-19-391-GLJ** |
| | ) | |
| **STATE OF OKLAHOMA, ex rel.** | ) | |
| **Regional University System of the** | ) | |
| **Oklahoma Board of Regents d/b/a/** | ) | |
| **Northeastern State University,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>ORDER</u>

This matter comes before the Court on motion for reconsideration of this Court's previous order granting partial summary judgment to Defendant State of Oklahoma ex rel. the Regional University System of the Oklahoma Board of Regents d/b/a Northeastern State University ("NSU").[1]   For the reasons set forth below, Plaintiff's Motion to Reconsider with Authority [Docket No. 137] is DENIED.

### I.      Procedural History

As relevant to this appeal, Plaintiff's Amended Complaint, filed on February 4, 2020, alleges the following claims as to NSU: (Count I) gender discrimination, race discrimination, retaliation for complaints of race and gender discrimination, and hostile work environment, in violation of Title VII; and (Count II) discrimination and retaliation

---

[1] Plaintiff named three other individual Defendants who have previously been dismissed and are not part of the present motion. *See* Docket Nos. 52, 126.

in violation of the Rehabilitation Act.[2]  NSU moved for summary judgment, which this Court granted as to all Plaintiff's claims against NSU except for the hostile work environment claim.  *See* Docket No. 126.   Plaintiff now requests partial reconsideration, *see id.*, p. 1, of that decision.  Although she never clarifies,[3] it appears Plaintiff challenges all portions of that decision which are not favorable to her, *i.e.*, the grant of summary judgment to her Title VII claims of gender discrimination, race discrimination, and retaliation, as well as her Rehabilitation Act claims of discrimination and retaliation.

## II.    Law Applicable

> The Federal Rules of Civil Procedure do not recognize a "motion to reconsider."  Instead, the rules allow a litigant subject to an adverse judgment to file either a motion to alter or amend the judgment pursuant to Fed.R.Civ.P. 59(e) or a motion seeking relief from the judgment pursuant to Fed.R.Civ.P. 60(b).   These two rules are distinct; they serve different purposes and produce different consequences.   Which rule applies to a motion depends essentially on the time a motion is served.

*Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991).  Moreover, "where, as here, a party's motion seeks reconsideration of a *non-final order*, such relief falls within the Court's discretionary power to revisit and amend its interlocutory orders as justice requires."  *Equal Emp. Opportunity Comm'n v. Jetstream Ground Servs., Inc.*, 2016 WL 879625, at *1 (D. Colo. Mar. 8, 2016) (emphasis added) (*citing Fye v. Okla. Corp.*

---

[2] All other claims have been dismissed and are not relevant to the Motion to Reconsider.

[3] Like her Amended Complaint and Response to Defendants' summary judgment motions, Plaintiff persists in combining arguments for all claims in Count I by organizing the briefing into the three steps from the *McDonnell Douglas* burden shifting test rather than by the actual claims, leaving the Court to parse the arguments itself.  Plaintiff claims her arguments are raised as such "for conciseness and clarity," but this organization has the opposite effect, particularly as to clarity.  *See* Docket No. 126, pp. 19-20, n.5.  The Court will not strain to apply the arguments where Plaintiff has not done so herself.

*Comm'n*, 516 F.3d 1217, 1224 n. 2 (10th Cir. 2008) ("The District Court's partial summary judgment ruling was not a final judgment. Thus, [plaintiff's] motion for reconsideration is considered an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment.") and Fed. R. Civ. P. 54(b)); *see also Price v. Philpot*, 420 F.3d 1158, 1167 n. 9 (10th Cir. 2005) ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge.") (quotation omitted); *Wagoner v. Wagoner*, 938 F.2d 1120, 1122 n. 1 (10th Cir. 1991) (noting that a motion for reconsideration filed prior to final judgment "was nothing more than an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment.").

Courts differ as to the standard of review applied to motions to reconsider interlocutory orders, but many apply the standard for motions to reconsider pursuant to Rule 59(e). *See In re Akbari-Shahmirzadi*, 2013 WL 1099794, at *4-5 (D. N.M. March 15, 2013) (collecting cases). The three major grounds for reconsideration of a non-final order are thus generally considered the same as the grounds for reconsideration under Rule 59(e): "where the court has misapprehended the facts, a party's position, or the controlling law." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *see also Bradley v. Denver Health & Hosp. Auth.*, 2011 WL 766951, at *1 (D. Colo. Feb. 24, 2011) ("Although courts in this district have applied different standards . . . the basic assessment tends to be the same: courts consider whether new evidence or legal authority has emerged or whether the prior ruling was clearly in error."). Even with broad discretionary authority, however, "[i]t is not appropriate to revisit issues already addressed or advance arguments

3

that could have been raised in prior briefing." *Paraclete*, 204 F.3d at 1012.  Because this review falls under the Court's general discretionary authority, the Court also notes that, "[i]n this circuit, abuse of discretion is defined as 'an arbitrary, capricious, whimsical, or manifestly unreasonable judgment.'" *Brown v. Presbyterian Healthcare Servs.*, 101 F.3d 1324, 1331 (10th Cir. 1996) (*quoting FDIC v. Oldenburg,* 34 F.3d 1529, 1555 (10th Cir. 1994)) (*quoting United States v. Hernandez–Herrera,* 952 F.2d 342, 343 (10th Cir. 1991)). Thus, "[a]bsent extraordinary circumstances . . . the basis for the second motion must not have been available at the time the first motion was filed." *Paraclete*, 204 F.3d at 1012.

## III.    Analysis

In her Motion, Plaintiff argues that the court committed error in incorrectly applying the summary judgment standard, erroneously requiring proof of discrimination at the prima facie stage of the *McDonnell Douglas*[4] test and applying the wrong prima facie test, erroneously applying a "pretext-plus" standard at the pretext stage of *McDonnell Douglas*, committing the same or similar errors in evaluating her retaliation claim(s), and improperly requiring her to prove a disability for her Rehabilitation Act claims where Defendants did not challenge that requirement.   The Court has carefully analyzed the Motion for Reconsideration (Docket No. 137), the Court's Order granting partial summary judgment (Docket No. 126), and the briefing on Defendants' underlying Motion for Summary Judgment (Docket Nos. 114, 119).  Based on that analysis, the Court concludes, as further discussed below, that its Order granting partial summary judgment to NSU with respect to

---

[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-803 (1973).

Plaintiff's claims was not clearly erroneous, nor did it result in manifest injustice. *See King v. Comm'r of Internal Revenue,* 207 Fed. Appx. 681, 683 (7th Cir. 2006) ("Reasonable minds might disagree over the interpretation of the [piece of evidence], but such a disagreement is insufficient to amount to clear error.").

Plaintiff's Motion to Reconsider does not offer an intervening change in controlling law, nor any new evidence previously unavailable. Rather, her Motion to Reconsider reurges the arguments she raised, or could have raised, in response to the summary judgment motion. More importantly, Plaintiff largely fails to connect her assertions of error regarding the prima facie case and the evidence of pretext with any specific claim (race discrimination, gender discrimination, etc.). As stated above, *supra* n.3, the Court will not strain to apply the arguments where Plaintiff has not done so herself.

### A. Summary Judgment Standard

Plaintiff's first general assertion of error is that this Court erred in applying the proper summary judgment standard because she was not given every available inference. This Court correctly cited the appropriate standard. *See* Docket No. 126, p. 3, *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."). Contrary to Plaintiff's assertion, this standard does not require the Court to adopt every inference propounded by Plaintiff. "Although the summary judgment standard requires that all inferences be drawn in favor of the non-moving party the non-movant receives the benefit of only those inferences that are 'justifiable,' 'reasonable,' or 'rational[.]'" *Parker v. Cogentrix Blount Cnty. Holdings, Inc.*, 2006 WL 561885, at *6 (N.D. Okla. Mar. 6,

2006) (quoting *Byers v. City of Albuquerque,* 150 F.3d 1271, 1274 (10th Cir. 1998); *Liberty Lobby,* 477 U.S. at 255; *Gullickson v. Southwest Airlines Pilots' Ass'n,* 87 F.3d 1176, 1183 (10th Cir. 1996); *Ortiz v. Norton,* 254 F.3d 889, 896 (10th Cir. 2001)). The Court has thus not "misapprehended. . . the controlling law." *Paraclete*, 204 F.3d at 1012.

### B. Count I – Title VII Claims of Race and Gender Discrimination

#### a. Prima Facie Case

Plaintiff persists in failing to distinguish her race and gender discrimination claims, and the Court will no longer attempt to do so for her. Instead, Plaintiff raises general arguments that this Court incorrectly held her to a newer, three-part formulation of the *McDonnell Douglas* test as to certain unidentified claims. Plaintiff contends that the older, four-part test she cited controls because it has not been modified by an *en banc* Tenth Circuit decision or intervening Supreme Court decision, *see United States v. White*, 782 F.3d 1118, 1126-1127 (10th Cir. 2015) (holding that "one panel of this court cannot overrule the judgment of another panel absent en banc consideration or an intervening Supreme Court decision that is contrary to or invalidates our previous analysis" (citation omitted)), and that the Court erroneously required proof of bias and relied on a lack of comparators.

The Court used a three-part test articulated by the Supreme Court for which the Tenth Circuit has more recently expressed a preference. *See* Docket No. 126, p. 11, n. 4 ("We note that the district court evaluated Ms. Tabor's prima facie case under an older, four-part test from the original *McDonnell Douglas*. We use a more recent variation of this test, a three-part test articulated by the Supreme Court in [*Texas Dept. of Cmty. Affairs v.*

*Burdine*, 450 U.S. 248, 253 (1981)]*, which the Tenth Circuit expressly prefers." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 n.4 (10th Cir. 2013)).  The Court acknowledges, however, that the *McDonnell Douglas* test was never meant to be "rigid nor mechanistic"; the overriding issue is whether the Plaintiff has alleged, as a *prima facie* matter, sufficient facts *to give rise to an inference of discrimination.  See Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 & n.1 (10th Cir. 2015) (emphasis added) (These elements "are neither rigid nor mechanistic, their purpose is the establishment of an initial inference of unlawful discrimination warranting a presumption of liability in plaintiff's favor.") (quotation omitted) (*citing E.E.O.C. v. PVNF, L.L.C.,* 487 F.3d 790, 800 (10th Cir. 2007)); *see also Kendrick v. Penske Transportation Services, Inc.*, 220 F.3d 1220, 1227 n.6 (10th Cir. 2000) ("The Court recognized in *McDonnell Douglas* that although the articulation of the plaintiff's prima facie test might vary somewhat depending on the context of the claim and the nature of the adverse employment action alleged,[] the essential purpose served by a prima facie test remains the same. . . .  The *critical prima facie inquiry* in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred '*under circumstances which give rise to an inference of unlawful discrimination*.'" (emphasis added) (*quoting Burdine,* 450 U.S. at 253-254).  The Court found that Plaintiff failed to meet this burden as to both her gender and race discrimination claims, then proceeded through the next two steps of the burden-shifting test only out of an abundance of caution. *See* Docket No. 126, pp. 13, 19.

Plaintiff asserted without support in her Response Brief that she was not required to establish "proof of bias," and she continues to assert it in her Motion for Reconsideration.

7

"It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Paraclete*, 204 F.3d at 1012.  Moreover, the case language cited by Plaintiff, *see Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1166 (10th Cir. 1998), applies to claims for reduction in force.  While Plaintiff has never clearly articulated her individual claims, it is clear she has not alleged a reduction-in-force claim and *Beaird* therefore does not apply.  Here, Plaintiff's unsupported assertion that she meets the prima facie case requirement for either gender or race discrimination is belied by Tenth Circuit and Supreme Court law requiring allegations that give rise to an inference of discrimination.

Finally, Plaintiff contends that the Court erroneously relied on a lack of comparators to find she had not established a prima facie case.  However, the Court stated that showing she was treated differently than similarly situated employees is "*another way*" she could have established a prima facie case, but that she had not.  Docket No. 126, p. 12 (emphasis added).  In other words, the Court attempted to analyze every possible avenue to determine if Plaintiff could meet this non-onerous standard and still found she did not.

   b. **Pretext**

Plaintiff challenges the Court's findings at the pretext stage of the *McDonnell Douglas* test, again without connecting her allegations of error with any specific claim. Plaintiff likewise misapprehends this standard.  After a Defendant propounds a legitimate, nondiscriminatory reason at step two of the *McDonnell Douglas* test, "the presumption of discrimination established by the prima facie showing 'simply drops out of the picture.' To survive summary judgment, Plaintiff must establish by a preponderance of the evidence

8

that the proffered reasons were not the true reasons for the employment decision." *Berry v. Airxcel, Inc.*, 2022 WL 2952511, at *7 (D. Kan. July 26, 2022) (*quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)) (*citing Aramburu v. Boeing Co.*, 112 F.3d 1398, 1403 (10th Cir. 1997)). Furthermore, as discussed above, *Beaird* is inapposite to the claims in this case and Plaintiff's citations to it in support of her arguments are unavailing.

Plaintiff further contends that the Court erroneously imposed an impermissible "pretext plus" standard, which requires a plaintiff to show something more than pretext. She contends that all doubts about pretext must be resolved in her favor, but even the case she cited in support states, "[e]ven though all doubts concerning pretext must be resolved in plaintiff's favor, a plaintiff's allegations alone will not defeat summary judgment." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997). Plaintiff asserts the Court ignored a "wealth" of pretext evidence in favor of Defendants' version of facts. In support, she revisits the evidence discussed at length in this Court's previous Order, *see* Docket No. 126, including the evidence relating to her disciplinary write-up for the timekeeping issue, as well as the annual performance reviews. Again, "[i]t is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Paraclete*, 204 F.3d at 1012. Plaintiff contends that her timekeeping issue was not serious and was a "low level of discipline." However, it is undisputed that this episode resulted in an "official reprimand" to Plaintiff. *See* Docket No. 114, Ex. 3. Furthermore, she contends that the evidence related to her annual performance evaluations should have been put before a jury and that the Court erred in failing to find she "Met Expectations" because that is the inference that favors her. In this regard, the Court declined to make any inferences,

9

instead finding only that Plaintiff's contention that these annual reviews were "wholly favorable" was disputed based on the plain language of the exhibits. *See* Docket No. 126, pp. 14-17, 25-26. In revisiting this evidence, Plaintiff contends the Court erred by ignoring a pervasive plan to manufacture some justification for Plaintiff's termination. As in her Response Brief, Plaintiff again refers to often undated and/or unsigned handwritten notes to support her contention that NSU leadership was looking for reasons to fire her. Plaintiff also contends, however, this was also an attempt to deprive her of FMLA protection and allow her to be fired. While Plaintiff may have presented evidence that NSU wished to fire her, she has failed to establish that NSU's legitimate, nondiscriminatory reasons for firing her were a mere pretext for race or gender discrimination. *See Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007) ("At this point, the presumption of discrimination created by the plaintiff's prima facie case 'simply drops out of the picture,' and '[t]he plaintiff then carries the full burden of persuasion to show that the defendant discriminated *on the illegal basis* of [age or] gender.'") (emphasis added) (*quoting St. Mary's,* 509 U.S. at 511, and *Bryant v. Farmers Insurance Exchange*, 432 F.3d 1114, 1125 (10th Cir. 2005)).

### C. Count I, Title VII Claim of Retaliation

On her claim(s) for retaliation based on race and/or gender, Plaintiff contends the Court incorrectly calculated the temporal proximity of the time from her most recent complaint considered protected activity to her termination because her intervening FMLA leave should have resulted in an adjustment to the time calculation, and she persists in contending that she did not merely repeat her earlier claims at the July 27 interview. Both

arguments were or should have been addressed in the earlier briefing and the Court declines to revisit it now.  "It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Paraclete*, 204 F.3d at 1012. "Absent extraordinary circumstances . . . the basis for the second motion must not have been available at the time the first motion was filed." *Id.*

Plaintiff further contends the Court erred in applying a "but-for" causation standard at the *prima facie* stage, because an inference is sufficient.  Additionally, Plaintiff resurfaces her argument that the Court imposed a "pretext-plus" standard by collapsing the *prima facie* case and fusing it with the pretext stage.  But the Tenth Circuit has stated that, at the *prima facie* stage, "where a considerable length of time has elapsed between a protected activity and an adverse employment action, a plaintiff wishing to survive summary judgment must 'present 'additional evidence' tying the adverse employment actions to [the plaintiff's protected activity].'" *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1191 (10th Cir. 2016) (*citing Burdine*, 450 U.S. at 253-254; *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)).  "The Supreme Court has likened this burden to a showing of 'but-for causation.'" *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014) (*quoting University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 360 (2013)).  Here, Plaintiff relied only on temporal proximity, and the Court found that her complaint was not sufficiently closely followed by her termination to meet the "but-for" causation standard that applies when temporal proximity will not suffice.

Finally, Plaintiff contends she presented sufficient evidence of a motive for retaliation because Dr. Reif was angry and stated that he found Plaintiff's claims of sexism

and/or racism to be "very insulting" and "insulting to my very core." *See* Docket No. 119, Ex. 29, p. 4. In fact, Dr. Reif asked the NSU investigating committee for options for filing a complaint of defamation of character. Dr. Reif believed Plaintiff wanted his job, and that she was resisting the ITS Department's move to greater transparency and accountability. *Id.* But the cases Plaintiff cites in support of her argument all pertain to claims for violation of an individual's First Amendment right to free speech and are inapposite to the claim here. Moreover, although Dr. Reif may have participated in discussions regarding her termination, he was not the ultimate decisionmaker for it. And once again, Plaintiff fails to tie any of the evidence to specific race or gender discrimination. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147-148 (2000) ("'It is not enough . . . to *dis* believe the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.' . . . For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.") (*quoting St. Mary's*, 509 U.S. at 519 (emphasis in original)).

### D. Count II - Rehabilitation Act Claims

Lastly, Plaintiff contends the Court erred in granting summary judgment on her claims under the Rehabilitation Act. Plaintiff asserts the Court wrongly determined she did not have a disability because NSU did not challenge the disability element of her claim and the Court therefore improperly imposed an argument on behalf of NSU. The Court

pointed out Plaintiff's error on this point in its original Order while acknowledging NSU's Motion for Summary Judgment and Brief likewise posed organizational problems, *see* Docket No. 126, pp. 31-32 n.6, but does so once again here.  NSU's Motion for Summary Judgment states,

> c. As to Disability.  Simply put, Plaintiff offers nothing.  Plaintiff produced no documents or other evidence in this case showing a medically diagnosed disability.  Plaintiff produced no evidence of requests to NSU to accommodate any disability.  (UMF #22).  Plaintiff produced no evidence that any one at NSU regarded Plaintiff as disabled.  (UMF #21).

Docket No. 114, p. 21, ¶ "c."[5]  Thus, the Court imposed no burden on what Plaintiff should have argued, and confined itself to the argument raised by NSU, namely, that Plaintiff did not have a disability.

Finally, the Court notes that Plaintiff also misapprehends the Court's Rehabilitation Act analysis regarding the discussion as to whether Plaintiff's FMLA application was sufficient to count as protected activity under the Rehabilitation Act.  The Court stated that the law was unclear, and further noted that the evidence in this case was particularly unclear as to the nature of the leave and whether such leave would qualify under the Act.  *See* Docket No. 126, p. 26.   The Court created no "bright-line rule," as asserted by Plaintiff.

In sum, for the reasons this Court rejected those arguments previously, *see* Docket No. 126, it rejects those arguments again now.  Because she has failed to demonstrate that reconsideration of any part of the Court's Order (Docket No. 126) is appropriate or warranted, Plaintiff's Motion for Reconsideration (Docket No. 137) must be denied.

---

[5] The Court refers to the page numbers assigned to the docketed motion by the Court's docketing system.  Plaintiff could also reference numbered page 14 of the Motion.

## CONCLUSION

Accordingly, Plaintiff's Motion to Reconsider with Authority [Docket No. 137] is hereby DENIED.

IT IS SO ORDERED this 17th day of May, 2023.

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**